**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| LAMACAR INC. d/b/a KELLI'S GIFT SHOP SUPPLIERS, | § § § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO. 3:21-cv-01396-S |
| V. | § | |
| | § | |
| THE CINCINNATI CASUALTY COMPANY, | § § | |
| *Defendant* | § | |

_____

### DEFENDANT THE CINCINNATI CASUALTY COMPANY'S RULE 12(b)(6) MOTION TO DISMISS
_____

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant The Cincinnati Casualty Company ("Cincinnati"), moves to dismiss Plaintiff Lamacar Inc. d/b/a Kelli's Gift Shop Suppliers' ("Lamacar") First Amended Complaint.  Lamacar fails to state a claim upon which relief may be granted and its complaint must be dismissed.

## OVERVIEW AND SUMMARY OF ARGUMENT

Lamacar seeks insurance coverage for business losses under a commercial property policy issued by Cincinnati (the "Policy"). Lamacar alleges that the Policy's Business Income Loss from Dependent Properties coverage applies to its financial losses due to the Coronavirus Pandemic. However, the Policy provides property insurance coverage, not financial loss coverage in the absence of direct physical loss or damage to property.  Direct physical loss or damage to property occurs when property is physically altered, such as in the case of a fire or storm.  The Coronavirus does not damage property; it hurts people.[1]  But, because business income coverage is part of a

---

[1] This dispute involves the Novel Coronavirus known as SARS-CoV-2, which causes the viral infection COVID-19 ("Coronavirus").

*property* insurance policy, the Policy protects Lamacar only for income losses tied to direct physical loss or damage to property, and not for economic loss caused by efforts to protect the public from disease.  Lamacar has not alleged any physical alteration to property that would give rise to its claimed business income loss.  Instead it alleges only the possible presence of the virus and its attachment to surfaces.  These same or similar allegations have been squarely rejected by Texas courts and courts across the country.  Lamacar fails to allege that the Coronavirus has caused legally cognizable "direct physical loss or damage" to its customers' property that would give rise to its claimed business income loss.  As a result, Lamacar's allegations are insufficient to state a claim for relief.

Moreover, because Lamacar has not suffered a covered loss, Lamacar cannot sustain any claims under the Texas Insurance Code or common law for bad faith.

For these reasons, and the other reasons established below, Lamacar's claim should be dismissed and judgment should be granted in favor of Cincinnati.

## STATEMENT OF FACTS

### I.    Allegations of the Complaint.

Lamacar is a gift shop supplier to retail partners throughout the United States, including hospitals, hotels and resorts, casinos, independent pharmacies, Amazon resellers, and specialty boutiques.[2]  In its Complaint, Lamacar alleges:

- "[D]roplets containing the Coronavirus physically transform the air and surrounding property from a benign, non-hazardous state to a toxic, hazardous state."[3]

- "[D]epending on the physical composition of the reactant surface, the Coronavirus chemically or ionically bonds with solids and particulate matter suspended in ambient air, resulting in a physical alteration of the property.  The Coronavirus is not simply gravitationally at rest on property surfaces, but materially bonds with

---

[2] Plaintiff's First Amended Complaint ("Amended Complaint") (Dkt. 5), at p. 1, ¶ 2.

[3] Amended Complaint at p. 2, ¶ 6.

air and property, which is physically changed by its interaction with the Coronavirus."[4]

- "The spread of airborne contagion through suspended particulate matter and the viral infestation of property surfaces has caused physical loss and damage to the business premises operated by Lamacar's customers.  As a result of this loss and damage Lamacar's customers have suspended or limited onsite retail operations. This suspension of retail operations has, in turn, caused a slowdown in Lamacar's operations and the related loss of business income.  Lamacar has lost thousands of dollars in revenue from thousands of individual customers, whose premises have become cankered by viral fomites and toxic air."[5]

- "Before the end of January 2020, the World Health Organization ("WHO") had declared a global health emergency." "The United States Department of Health and Human Services also declared a public health emergency on the same day."[6]

- "Over the next six weeks, the number of cases, deaths and affected countries continued to the climb to the point that the WHO "made the assessment that COVID-19 can be characterized as a pandemic."[7]

- "Two days later, on March 13, 2020, President Trump issued a proclamation declaring "that the COVID-19 outbreak in the United States constitutes a national emergency."[8]

- "State and local governments soon followed suit by issuing a range of shelter-in-place, quarantine and lockdown orders.[9]

- "On information and belief, each of Lamacar's customers have been exposed to the Coronavirus during the course of the pandemic, including through the presence of employees, vendors or patrons infected with COVID-19."[10]

- As these individuals have engaged in normal respiratory function while on Lamacar's customers' premises—either through talking, sneezing, coughing or breathing—respiratory secretions and droplets containing the Coronavirus have entered the ambient air circulating inside and around the premises of Lamacar's customers.[11]

---

[4] Amended Complaint at p. 2, ¶ 7.

[5] Amended Complaint at p. 2, ¶ 9.

[6] Amended Complaint at p. 18, ¶ 65.

[7] Amended Complaint at p. 18, ¶ 66.

[8] Amended Complaint at p. 18, ¶ 67.

[9] Amended Complaint at p. 18, ¶ 68.

[10] Amended Complaint at p. 23, ¶ 87.

[11] Amended Complaint at p. 24, ¶ 88.

- "Respiratory secretions and virus-containing respiratory droplets have also contaminated and physically altered the surfaces of real and personal property at each of Lamacar's customers."[12]

- "Despite measures taken to avoid and remediate exposure to COVID-19, including face masks, air filtration, regular cleaning and sanitization, social distancing, and the erection of barriers and crowd control features, exposure and infection at Lamacar's customers has continued throughout 2020 and into 2021.[13]

- "The viral infestation and alteration of air and property at Lamacar's customers with the Coronavirus constitutes physical loss and damage to Lamacar's customers, upon which Lamacar depends for the sale of its gift shop supplies."[14]

Lamacar alleges that Cincinnati failed and refused to provide coverage for Lamacar's claim.[15]  Lamacar claims coverage is owed solely under the Policy's Business Income Loss from Dependent Properties coverage.[16]

Lamacar asserts four causes of action: 1) Breach of Contract; 2) violations of Chapter 541 of the Texas Insurance Code; 3) violations of Chapter 542 of the Texas Insurance Code; and 4) Breach of the Duty of Good Faith and Fair Dealing.  Lamacar alleges that it suffered business losses, and thus made an insurance claim, but that Cincinnati breached the contract of insurance by failing to indemnify Lamacar for those claimed losses.

## II.    Lamacar's Policy

Cincinnati issued Policy No. EPP 046 98 51, for the policy period November 15, 2019 to November 15, 2020.[17]  The relevant forms in the Policy for purposes of Lamacar's claim and this Motion are:

---

[12] Amended Complaint at p. 24, ¶ 89.

[13] Amended Complaint at p. 24, ¶ 90.

[14] Amended Complaint at p. 24, ¶ 91.

[15] Amended Complaint at pp. 26-28.

[16] Cincinnati removed the case to this Court on June 15, 2021 based on Plaintiff's Original Petition filed in the state court.

[17] Dkt. #1-3 - Exhibit "A" to Lamacar's Original Petition.

4

1. Building and Personal Property Coverage Form (FM 101 05 16), attached as Exhibit "A"; and,

2. Commercial Property XC+ (Expanded Coverage Plus) Endorsement Form (FA 250 05 16), attached as Exhibit "B".

Form FM 101 05 16 is the main property coverage form that provides coverage for Business Income and Extra Expense. Form FA 250 05 16 modifies the FM 101 05 16 and provides coverage for business income loss from dependent properties.[18] Using the same language, these forms provide Business Income and Extra Expense coverage, but only if the necessary elements for property coverage are satisfied. Direct physical loss or damage to property is a necessary element of coverage.

## III.    The Policy's Direct Physical Loss to Property Requirement.

The requirement of direct physical loss to property is a core element in property insurance policies like Lamacar's Policy. Direct physical loss to property is an explicit requirement for all Business Income coverage under the Policy:

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

(Ex. "A" - FM 101 05 16 at 18 of 40). Under the Policy, the term "loss" is defined to mean physical loss or physical damage. (Ex. "A" - FM 101 05 16 at 13 of 40).

The requirement of *direct* physical loss to property is also a threshold requirement that there must be a Covered Cause of Loss before any coverage is available. (Ex. "A" - FM 101 05 16 at 3 of 40). Covered Causes of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (Ex. "A" - FM 101 05 16 at 5 of 40). The requirement of direct

---

[18] In relevant part, the Policy defines "dependent property" as "property operated by others whom you depend on to . . . **(b)** Accept your products or services." Exhibit "B" – FA 250 05 16 at 2 of 11.

physical loss or damage is carried through in the Commercial Property Expanded Coverage (XC)

Coverage Endorsement Form (FA 250 05 16), for Business Income coverage for Dependent

Properties:

> We will pay for the actual loss of "Business Income" you sustain due to the
> necessary "suspension" of your "operations" during the "period of restoration".
> The "suspension" must be caused by direct "loss" to "dependent property" caused
> by or resulting from any Covered Cause of Loss.

(Ex. "B" – FA 250 05 16 at 1 of 11).  Direct physical loss to property is a necessary element of

Covered Causes of Loss and therefore all of the coverage under the Policy. This includes the

Business Income Loss from Dependent Properties coverage sought by Lamacar.

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, the claimant must plead enough facts to

state a claim to relief that is plausible on its face.[19]  "The '[f]actual allegations must be enough to

raise a right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact).'"[20]  A claim has facial plausibility when the claimant

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged.[21] Legal conclusions and other unsupported conclusions stated in

the complaint may not be considered in determining a motion to dismiss. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions."); *In re Great Lakes Dredge & Dock Co. LLC*,

624 F.3d 201, 210 (5th Cir. 2010) ("We do not accept as true conclusory allegations, unwarranted

factual inferences, or legal conclusions") (citations omitted).

---

[19] *Mission Toxicology, L.L.C. v. United Healthcare Ins. Co.*, 2018 WL 2222854, at *3 (W.D. Tex. Apr. 20, 2018) (Ezra, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[20] *Mission Toxicology*, 2018 WL 2222854 at *3 (quoting *Twombly*, 550 U.S. at 555).

[21] *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court may take judicial notice of the underlying insurance policy, which is referenced in and attached to the Complaint, and is central to Lamacar's claims.[22]  "[I]t is the court's duty to give the words used their plain meaning."[23]  "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law."[24] The Texas Supreme Court has clearly stated that "Texas courts must stick to what [insurance] policies say."[25]  They "must enforce the contract as made by the parties, and cannot make a new contract for them," even "when a crisis arises."[26]

<u>**ARGUMENT AND AUTHORITIES**</u>

**I.      There Is No Direct Physical Loss To Property and Accordingly No Coverage Under the Policy**

The Policy only provides coverage for Business Income Loss from Dependent Properties when there has been direct physical loss or damage to the property of others.  However, the Complaint does not allege facts showing any direct physical loss to property.  Accordingly, Lamacar has not plead facts to support its Complaint.

**A.      Direct Physical Loss to Property Means There Must be Physical Alteration to Property.**

It is black-letter law in Texas, and throughout the country, that where the terms of an insurance policy are unambiguous, the policy must be applied as written.[27]  Applying that black-letter law, a substantial body of authorities throughout the United States, including a growing number of Texas decisions, have examined claims that are factually the same or analogous to

---

[22] *Id.* at *3; *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[23] *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).

[24] *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

[25] *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 753 (Tex. 2010).

[26] *Id.*, 202 S.W.3d at 753.

[27] *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex 2015) (If an insurance contract uses unambiguous language, we will construe it as a matter of law and enforce it as written).

Plaintiff's claims here. These courts hold that policies, like Plaintiff's, unambiguously require "a distinct, demonstrable, physical alteration of the property" in order to fulfill the requirement of direct physical loss or damage to property. [28] And, the courts dismiss coronavirus-related complaints because the virus is doing no such thing. *See, e.g., Vandelay Hospitality Group v. The Cincinnati Insurance Company, et. al.*, 2021 WL 462105 (N.D. Tex. Feb.9, 2021); *ILIOS Production Design, LLC v. The Cincinnati Insurance Company, Inc., et al.*, 2021 WL 1381148 (W.D. Tex Apr. 12, 2021); *Aggie Investments, LLC v. Continental Casualty Company*, 2021 WL 1550479 (E.D. Texas April 20, 2021).

Federal district courts in Texas have analyzed identical provisions in Cincinnati commercial property policies issued to other Texas policyholders. In each case, the court concluded that the unambiguous terms of the policy do not provide coverage for solely economic losses unaccompanied by physical loss or damage to property. The policies required a distinct, demonstrable, physical alteration to property, which was not alleged. In *Vandelay*, the plaintiff's amended complaint included allegations similar to those alleged here, including that "COVID-19 was present in its restaurants and 'infected' the premises." *Vandelay*, 2021 WL 462105 at \*1. The Court considered these allegations but concluded that the allegations were not sufficient to state a cause of action.

> But assuming *arguendo* that Vandelay has sufficiently pleaded that COVID-19 was the source of damage or loss to the premises, it has not adequately alleged that the presence of COVID-19 caused any distinct, demonstrable physical alteration of Vandelay's property so as to trigger coverage under any provision of the Policy.[29]

---

[28] *Sultan Hajer d/b/a Rug Outlet v. Ohio Se. Ins. Co.*, 505 F. Supp. 3d 646, 650 (E. D. Tex. 2020). This requirement is rooted in Fifth Circuit precedent. *See Hartford Ins. Co. v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006).

[29] *Vandelay*, 2021 WL 462105 at \*1.

8

Similarly, in *ILIOS,* a federal district court in the Western District of Texas was presented with allegations that "COVID-19 is said to attach to physical surfaces and is known to spread through the air and that is was probable that Plaintiff's customers and employees brought COVID-19 onto Plaintiff's premises and spread COVID-19 across Plaintiff's property,"[30] just as Lamacar has alleged here. These allegations were rejected as insufficient to establish a distinct, demonstrable physical alteration of the property as would be necessary to state a claim for coverage. "Even assuming that the virus that causes COVID-19 was present at Plaintiff's property, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies and can be removed from surfaces with routine cleaning and disinfectant."[31] *See Aggie Investments,* 2021 WL 1550479, at \*4 ("loss of access, or even restricted access, is not the tangible alteration of structures that 'direct physical loss' contemplates").

Texas courts construing similar language in policies issued by other insurers have reached the same conclusion. *Diesel* was among the first American rulings involving property insurance coverage for COVID-19 business interruption claims. In that case, the Western District of Texas held that the Coronavirus does not cause direct physical loss to property as required by a property insurance policy.[32] In *Diesel*, and as alleged here, a series of executive orders were issued on a county and state level in Texas in response to the Coronavirus pandemic. In relevant part, the executive orders required the closure of "non-essential" businesses to help prevent the spread of Coronavirus to other individuals. The *Diesel* plaintiffs argued that as a result of these orders, they suffered significant economic losses, which they alleged were covered under a property insurance

---

[30] *ILIOS*, 2021 WL 1381148 at \*4 (citations omitted).

[31] *Id.* at \*7.

[32] *Diesel Barbershop, LLC et al v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Texas, August 13, 2020)

policy similar to the one here.  The *Diesel* court disagreed.  Specifically, *Diesel* held that the Coronavirus did not cause a direct physical loss, as "the loss needs to have been a 'distinct, demonstrable physical alteration of the property."[33]  Because the required "distinct, demonstrable physical alteration" was not alleged, the *Diesel* court dismissed the complaint.

     *Diesel* is followed by several Texas cases and supported by an abundant and growing body of authorities throughout the United States.[34]  For example, in *Steiner Steakhouse,*[35] the plaintiff made similar arguments under substantially similar policy language. The restaurant claimed that its inability to provide indoor dining fit within the plain meaning of "loss."  *Steiner Steakhouse* rejected this argument and held that the only reasonable interpretation of "direct physical loss" requires a "distinct, demonstrable, physical alteration of the property."[36]  "Steiner Steakhouse's claim that consumers stayed away of their own volition, or in obedience to government orders, causing it to lose business income, does not qualify as 'physical loss or damage' in Texas.  Thus, there is no coverage under this provision."[37]  The fact that Lamacar only asserts claims for business

---

[33] *Diesel*, 2020 WL 4724305 at *5, citing *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co*., 181 F. App'x 465, 470 (5th Cir. 2006) ("The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

[34] *Selery Fulfillment, Inc. v. Colony Insurance Company,* No. 4:20-CV-853, 2021 WL 963742 (E.D. Tex. Mar. 15, 2021); *Steiner Steakhouse, LLC v. AMCO Insurance Company*, 2020 WL 6587216 (W.D. Tex. Dec. 30, 2020); *Terry Black's Barbecue, LLC,* 2020 WL 7351246 (W.D. Tex. Dec. 14, 2020); *Hajer*, 505 F. Supp. 3d at 650; *Diesel Barbershop, LLC v. State Farm Lloyds,* No. 5:20-CV-461-DAE, 2020 WL 4724305, * 5 (W.D. Tex. Aug. 13, 2020); *Ybarra Investments, Inc. v. Scottsdale Ins. Co*., No. 2020-25079, 2020 WL 7416720 (Dist. Ct. Tex., Dec. 14, 2020); *Aggie Investments,* 2021 WL 1550479, at *5.

[35] *Steiner Steakhouse*, 2020 WL 8879041.

[36] *Id.* at *3.

[37] *Id.* at *4; *also see Diesel*, 2020 WL 4724305, at *5 (holding lost use of property due to COVID-19 pandemic or related government orders did not constitute direct physical loss such that it may be the basis for an insurance claim for loss of business income); *Cafe La Trova LLC v. Aspen Specialty Ins. Co.,* No. 20-22055-CIV, 2021 WL 602585 (S.D. Fla. Feb. 16, 2021); *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012); *Acorn Inv. Co. v. Michigan Basic Prop. Ins. Ass'n*, 2009 WL 2952677, at *1 (Mich. Ct. App. Sept. 15, 2009); *and see*, *1210 McGavock St. Hosp. Part., LLC, d/b/a Adele's Restaurant v. Admiral Ind. Co.*, 509 F. Supp. 3d 1032, 1042 (M.D. Tenn. 2020); *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 2020 WL 7490095 at **8-12 (N.D. Ohio Dec. 21, 2020); *Zwillo V, Corp. v. Lexington Ins. Co*., 504 F. Supp. 3d 1034 (W.D. Mo. 2020), appeal dismissed, No. 21-1015, 2021

income loss from dependent properties (not its own property) does not change the result, because "[t]he Dependent Property provision pertains to properties other than those owned by the insured, and requires physical loss or damage."[38]

In *Terry Black's Barbecue*, the Court adopted the reasoning of *Diesel* that, "COVID-19 does not produce a direct physical loss to property like 'a noxious odor that makes a business uninhabitable'; therefore, the plaintiffs failed to plead 'a direct physical loss' to property to trigger coverage."[39]  *Hajer* is to the same effect: "the scope of the term 'physical loss' is far narrower than plaintiff contends and is only reasonably read in context as meaning 'a distinct, demonstrable, physical alteration of the property.'"[40]

In *Selery Fulfillment*, the court found that the Policy "provision's focus on 'direct physical loss of' or 'damage to' property strongly suggests there must be some tangible, concrete issue with that property."[41]  "Therefore, it is unsurprising that district courts in the Fifth Circuit which have decided similar insurance cases dealing with COVID-19 have uniformly held that the pandemic

---

WL 2792962 (8th Cir. Mar. 18, 2021) ("'[D]irect physical loss of or damage to' does not encompass simple deprivation of use.

[38] *Associates in Periodontics, PLC v. The Cincinnati Insurance Company*, 2021 WL 1976404, at \*7 (D. Vermont May 18, 2021).

[39]  *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, No. 1:20-CV-665-RP, 2020 WL 7351246, at \*5 (W.D. Tex. Dec. 14, 2020) citing *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020).

[40] *Hajer*, 505 F. Supp. 3d at (quoting *Hartford*, 181 F. App'x at 470). *See also Selery Fulfillment, Inc. v. Colony Insurance Company,* 2021 WL 963742 (E.D. Tex. Mar. 15, 2021).

[41] *Selery Fulfillment*, 2021 WL 963742 at \*4, citing *Hajer,* 505 F. Supp. 3d at 650; *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 CIV. 4612 (JPC), 2020 WL 7321405, at \*6 (S.D.N.Y. Dec. 11, 2020) (reasoning that because "physical" is defined as relating to, or involving material things, "physical loss," similarly must mean concrete, tangible loss to property); *see also Sandy Point Dental, PC v. Cincinnati Ins. Co.,* No. 20 CV 2160, 2020 WL 5630465, at \*2 (N.D. Ill. Sept. 21, 2020) ("The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure.").

does not constitute a 'direct physical loss of or damage" to property.[42]  "The majority of federal courts agree with similar reasoning."[43]

*Vandelay, ILIOS, Diesel, Terry Black's Barbecue, Hajer, Selery Fulfillment, Steiner Steakhouse*, and *Aggie Investments*, establish that physical loss requires a "distinct, demonstrable physical alteration of the property."  The Complaints in those cases were dismissed because the insureds did not plausibly allege that the Coronavirus physically altered covered property. .

Lamacar adds allegations to its Amended Complaint in an attempt to address the pleading deficiencies noted in these numerous prior decisions. But Lamacar's new allegations fail.  Lamacar does not allege physical alteration to property as required under the Policy.  Instead, Lamacar merely alleges the potential presence of the virus in the air and on surfaces.  Lamacar attempts to overcome this failing by alleging there is a weak chemical or ionic bond between the Coronavirus, airborne particulates and surfaces.  However, the airborne particulate or surfaces are not permanently, physically altered.  As numerous courts have noted, the Coronavirus is easily

---

[42] *Selery Fulfillment*, 2021 WL 963742 at * 5; citing *Terry Black's Barbecue*, 2020 WL 7351246, at *5–8 (W.D. Tex. Dec. 14, 2020) (agreeing with other district courts in the Fifth Circuit that government orders do not constitute a direct physical loss of or damage to property); *Hajer,* 505 F. Supp. 3d at 650; *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am*., 499 F. Supp. 3d 288, 294 (S.D. Miss. 2020); *Diesel*, 479 F. Supp. 3d at 360 (holding that the Fifth Circuit's definition of physical loss precluded the plaintiffs from stating a claim); *and see Q Clothier New Orleans LLC v. Twin City Fire Ins. Co*., No. CV 20-1470, 2021 WL 1600247 (E.D. La. Apr. 23, 2021) (dismissing insured's covid business interruption claim because coverage required 'some physical manifestation of loss or damage' rather than some metaphysical or otherwise intangible loss).

[43] *Selery Fulfillment*, 2021 WL 963742 at * 5 citing *See Sandy Point Dental*, 2020 WL 5630465 at *2 (holding similar policy language excluded coverage and finding its decision was "consistent with other courts that have evaluated whether the coronavirus causes property damage warranting insurance coverage"); *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 499 F. Supp. 3d 670, 674 (N.D. Cal. 2020) ("I will follow the overwhelming majority of courts that have determined that the mere threat of coronavirus cannot cause a 'direct physical loss of or damage to' covered property as required under the Policy."); *Atma Beauty, Inc. v. HDI Glob. Specialty SE*, No. 1:20-CV-21745, 2020 WL 7770398, at *4 (S.D. Fla. Dec. 30, 2020) ("Plaintiff's allegations provide the Court no reason to deviate from the prevailing consensus in this Circuit and others regarding business interruption claims arising from the COVID-19 pandemic."); *Travelers*, 499 F. Supp. 3d at 295 ("Most courts have rejected these claims and granted motions to dismiss based on the finding that the businesses' complete or partial closures due to government orders issued to slow the spread of COVID-19 do not constitute 'direct physical loss of or damage to property.'").

removed by cleaning or disinfecting.[44]  Plaintiff fails to allege that its customers' property has been physically damaged by the Coronavirus. Therefore, the Complaint should be dismissed.

### 1.   Presence in Air and Attachment to Airborne Particulates is Not Physical Loss

In the Amended Complaint, Lamacar alleges that "a . . . physical transformation occurs as respiratory droplets contaminate ambient air when an infected person breathes, coughs, sneezes, sings or talks."[45]  Lamacar further alleges that the "spike proteins" on the outer shell of the Coronavirus "react with particulate matter in respiratory droplets and in the ambient air, including minerals, soot or plastics, to remain airborne over extended periods of time."[46]  Lamacar argues that the Coronavirus, through its presence in the air and through attachment to particulates in the air, "constitutes a physical alteration or change in the ambient air,"[47] and that "when an infected person—whether symptomatic or asymptomatic—coughs, sneezes, talks, sings or breathes, toxic virions physically, if not chemically, alter the ambient breathable air and constituent particulate matter."[48]  These arguments are unavailing.  First, the air is not property, and does not meet the definition of Dependent Property. Second, the virus is merely present in the ambient air and it is a temporary condition that will dissipate over time or can be cleaned, leaving the ambient air just as it was before introduction of the virus.

---

[44] *University of Saint Thomas v. American Home Assurance Co.*, 2021 WL 3129330, at *5 (S.D.Tex. July 23, 2021); *citing ILIOS*, 2021 WL 1381148 at *7 ("Even taking as true UST's allegation that the virus was present on its campus, as the court must at this stage, the court concludes that it does "not constitute a direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated").

[45] Amended Complaint, at p. 12, ¶ 52.  Plaintiff cites to a WHO publication, but the quoted material does not speak to a "physical transformation" of air, only the transmission of the virus through respiratory droplets suspended in the air.

[46] Amended Complaint, at p. 13, ¶ 55.

[47] Amended Complaint, at p. 14, ¶ 58.

[48] Amended Complaint, at p. 17, ¶ 61.

The ambient air is not property because it cannot be reduced to possession.[49] More importantly though, even if the Coronavirus is present in the ambient air, whether carried by droplets or attached to particulates, the air is not damaged by the presence of the Coronavirus. The condition is temporary and does not permanently change the air because it can be eliminated. In *University of Saint Thomas v. American Home Assurance Co.*, District Judge Gray Miller addressed the presence of the Coronavirus in the air and on surfaces:

> The next question, then, is whether claims that the presence of the SARS-CoV-2 virus on UST's campus—in the air and on the surfaces of its facilities—are sufficient to allege that there was "a distinct, demonstrable, physical alteration of the property." They are not. Courts in Texas are in agreement that the SARS-CoV-2 virus "does not cause physical damage to property; it causes people to get sick." *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, No. H-20-3606, 2021 WL 1232778, at *5 (S.D. Tex. Mar. 12, 2021) (Rosenthal, C.J.). Even taking as true UST's allegation that the virus was present on its campus, as the court must at this stage, the court concludes that it does "not constitute a direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated."[50]

Similar results have been reached in other jurisdictions as well. *Out West Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, 2021 WL 1056627, at *1, *2, *4 (N.D. Cal. Mar. 19, 2021) (granting insurer judgment on the pleadings where insured alleged that the "presence of the virus in the air makes restaurant properties with outdoor or indoor dining spaces unusable and unfit for normal occupancy" and "the presence of the virus at [insured's] locations, including on surfaces, also causes physical alteration of the integrity of the property and causes physical loss" and "over 100 employees test[ed] positive for COVID-19 across numerous of its insured locations" because the insured's "claims do not constitute physical loss or damage as a matter of law"); *Dino Drop, Inc. v. Cincinnati Ins. Co.*, No. 20-12549, 2021 WL 2529817, at *7 (E.D. Mich. June 21, 2021) ("The

---

[49] *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.,* 958 F.2d 896, 903 n. 12 (9th Cir. 1992) ("the air we breathe . . . cannot be reduced to possession and therefore cannot be the basis of property rights").

[50] *University of Saint Thomas*, 2021 WL 3129330, at *5; *citing ILIOS*, 2021 WL 1381148 at *7.

Court agrees with Cincinnati's assessment that the presence of COVID-19 at the premises is analogous to the presence of virus particles causing influenza or the common cold. . . . Though each virus can be harmful and potentially deadly, no reasonable person would assert that their presence renders property uninhabitable or substantially unusable."); *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021) (holding "allegations showing the alleged presence of COVID-19 in or on the covered property are not sufficient to trigger coverage when direct physical loss of or damage to property is required. If, for example, a sick person walked into one of Plaintiffs' restaurants and left behind COVID-19 particulates on a countertop, it would strain credulity to say that the countertop was damaged or physically altered as a result").

## 2.    Attachment to Property is Not Physical Loss

Lamacar's Amended Complaint also adds allegations concerning the attachment of the Coronavirus to surfaces through chemical, ionic, electrostatic or hydrogen bonding.[51] None of these methods of "attachment" constitutes "direct physical loss or damage" because the bonds are temporary and the character and condition of property is the same after the virus is eliminated or removed.  "No repairs or remediation to the premises are necessary for its safe occupation in the event the virus is controlled and no longer poses a threat.  In short, the pandemic impacts human health and human behavior, not physical structures."[52]  "The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant."[53]  *Also see Green Beginnings, LLC v. W. Bend Ins. Co.*, 2021 WL 2210116, at *5 (E.D. Wis. May 28, 2021) ("As for Green Beginnings' contention that the virus is on its property

---

[51] *See* generally, Amended Complaint, p.7, ¶ 37 through p. 12, ¶ 51.

[52] *ILIOS,* 2021 WL 1381148 at *7.

[53] *Terry Black's Barbecue*, 2020 WL 7351246, at *8.

and has damaged it, the presence of the virus on property does not cause a 'loss' of the use of the property. . . . COVID-19 particles only very temporarily impact the use of the objects they touch without altering them in appearance, shape, color, or other material dimension. . . . COVID-19 particles do not damage or cause the loss of Green Beginnings' premises"); *L&J Mattson's Co. v. Cincinnati Ins. Co., Inc.*, No. 20 C 7784, 2021 WL 1688153, at \*5 (N.D. Ill. Apr. 29, 2021) ("One does not replace, rebuild or repair a countertop [or a doorknob or a floor] because SARS-CoV-2 [or salmonella, MRSA or the flu virus] is present on the surface. One simply cleans the surface"). This conclusion is supported by decisions throughout the country. Federal courts in Alabama, Arizona, Arkansas, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Missouri, New York, North Carolina, Pennsylvania, Vermont, West Virginia – and in Texas - have all granted Cincinnati's motions to dismiss Coronavirus coverage complaints. Each of the insurance policies at issue in those cases contained the same or substantively identical language as Plaintiff's Policy here and required direct physical loss to property.[54]

---

[54] *See Oral Surgeons, P.C. v. The Cincinnati Ins. Co*., 2020 WL 5820552 at \*1 (S.D. Iowa Sep. 29, 2020) ("virus-related closures of business do not amount to direct loss to property covered by the Cincinnati policy of insurance. The few contrary cases cited by [Oral Surgeons] are distinguishable on their facts and not as well analyzed as the many authorities cited by Cincinnati.") (emphasis added); *Sandy Point Dental, PC v. The Cincinnati Ins. Co.,* 2020 WL 5630465 at \*2 (N.D. Ill. Sep. 21, 2020) ("[t]he words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure."); *Georgetown Dental, LLC v. Cincinnati Insurance Company, et al.*, No. 121CV00383TWPMJD, 2021 WL 1967180 (S.D. Ind. May 17, 2021) (physical loss requires demonstrable harm to the premises); *Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co.*, No. 20 CV 50284, 2021 WL 346423 (N.D. Ill. Jan. 19, 2021); *Webb Dental Assocs. DMD PA v. Cincinnati Indem. Co*., No. 1:20-CV-250-AW-GRJ, 2021 WL 800113 (N.D. Fla. Jan. 15, 2021); *Promotional Headwear Int'l v. The Cincinnati Ins. Co.,* 2020 WL 7078735 at \*6, n. 53 (W.D. MO Dec. 3, 2020) ("the overwhelming majority of cases to consider business income claims stemming from COVID-19 with similar policy language hold that "direct physical loss or damage" to property requires some showing of actual or tangible harm to or intrusion on the property itself.") (collecting cases); *4431, Inc. v. The Cincinnati Ins. Co.,* 2020 WL 7075318 (E.D. Pa Dec. 3, 2020); *T & E Chicago LLC v. The Cincinnati Ins. Co.*, 2020 WL 6801845 at \*\*4-5 (N.D. Ill. Nov. 19, 2020) ("there are a multitude of cases [that] interpret policy provisions [requiring direct physical loss or damage] as not providing coverage for COVID-19-related losses"; "loss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property."); *Uncork and Create LLC v. The Cincinnati Ins. Co.,* 2020 WL 6436948 at \*4-5 (S.D. WV Nov. 2, 2020) (even if present, the virus does not physically damage property as required for any coverage under the unambiguous language of the policy). For the Court's convenience, a more complete list of these authorities and others supporting Cincinnati's position is attached as Ex. "C."

*Associates in Periodontics, PLC v. The Cincinnati Insurance Company,* 2021 WL 1976404 (D. Vermont May 18, 2021) is particularly instructive. *Associates in Periodontics* also involved a claim for dependent property coverage. The *Associates in Periodontics* court held that the plaintiff's claim for financial losses, absent any actual, demonstrable change to property, failed to show direct physical loss or damage to property as required for the dependent property coverage.[55] "The Complaint alleges injury in the form of a virus that disappears naturally after a relatively short period of time. The temporary nature of the harm, with no discernable impact on the covered property is significant."[56] Here, Lamacar does not allege that the attachments of the Coronavirus to surfaces of property are permanent or even long lasting.[57]

Lamacar's Complaint fails to allege direct physical damage to covered property, and thus fails "to state a claim to relief that is plausible on its face" or to allow a reasonable inference that Cincinnati is liable as alleged and should be dismissed.[58]

### B.  The Coronavirus Decisions are Consistent with Established, Prevailing Law Nationally

The Coronavirus coverage decisions join a long line of authorities throughout the country, concerning a variety of types of claims and the same or similar policy language, that require a threshold allegation of direct physical loss to covered property in order to trigger coverage. The overwhelming consensus is that there must be a physical alteration of property and that financial loss alone does not comply with the policy requirement of direct physical loss to property. The

---

[55] *Associates in Periodontics,* 2021 WL 1976404 at *7.

[56] *Id.* at *5. *See also Northwell Health, Inc. v. Lexington, Ins. Co.*, 2021 WL 3139991, at *5 (S.D.N.Y. July 26, 2021) (looking at New York law, reciting that the phrase direct physical loss or damage "ordinarily connote[s] actual, demonstrable harm of some form to the premises itself, rather than forced closure of premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure"), citing *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).

[57] Amended Complaint, p. 9, ¶ 44 ("on cloth for up to 24 hours, on steel for up to 48 hours, and on plastics for up to 72 hours"); p. 10, ¶ 45 ("on plastics, metals and glass/ceramic/rubber respectively for up to 3-4 days, 3-4 days and 2 days").

[58] *Mission Toxicology*, 2018 WL 2222854, at *3 (citations omitted).

Fifth Circuit has held that "physical loss" involves some "threshold concept of physical loss or damage to the covered property." *Hartford Ins. Co. Midwest v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (citing 10A COUCH ON INS. §148:46 (3d ed. 2005). The phrase "'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper.'"[59]

Circuit courts in other jurisdictions have similarly held there is no physical loss or damage where an item or structure merely needs to be cleaned. *See, e.g.*, *Universal Image*, 475 F. App'x at 572 & n. 7 (6th Cir. 2012) (applying Michigan law) (mold and bacterial contamination did not constitute "direct physical loss or damage" because the allegedly affected property (tapes) "merely required cleaning."). Likewise, the 11th Circuit recently affirmed that direct physical loss or damage requires an actual alteration or change in property. *Mama Jo's, Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) (applying Florida law), aff'g, *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362, 2018 WL 3412974 (S.D. Fla. Jun. 11, 2018) ("an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'"), *citing Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017) (recognizing the "damage [must] be actual"); *Vazquez v. Citizens Prop. Ins. Corp.*, 304 S.2d 1280, 1284 (Fla 3d DCA 2017); *Universal Image*, 475 F. App'x at 573 ("[C]leaning . . . expenses . . . are not tangible, physical losses, but economic losses."); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779, 115 Cal. Rptr. 3d 27, 37 (2010) ("A direct physical loss 'contemplates an actual change in insured property.'"); *AFLAC Inc. v. Chubb & Sons, Inc.*, (2003) 260 Ga. App. 306, 581 S.E.2d 317, 319 (same). *See Northeast Georgia Heart Ctr.,*

---

[59] *Miss. Valley Gas Co.*, 181 F. App'x at 470, *citing Trinity Indus., Inc. v. Ins. Co. of N. Am.,* 916 F.2d 267, 270–71 (5th Cir.1990).

*P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022 at \*1 (N.D. Ga. May 23, 2014) ("Without doubt, losing physical possession may qualify as a direct physical loss. ***Nonetheless, there is a difference between a loss of physical possession and a loss of use***.") (emphasis added).[60]

As in all these cases, the plain and unambiguous language of the Plaintiff's policy requires direct *physical* loss or damage *to property*. On this fundamental issue, this case cannot be distinguished from any of the authorities requiring actual, tangible, demonstrable physical alteration of property in order to satisfy a policy requirement of direct physical loss or damage to property.

Further, if the spread of Coronavirus were sufficient to cause physical loss to property, every property, everywhere in the world, would have sustained direct physical loss or damage, unless and until every virus or communicable disease is eradicated from the Earth. Plainly, such a construction is untenable, unsustainable for the business of insurance, and simply defies common sense. Lamacar's allegations serve only to highlight the very reason why they do not, and cannot, show they are entitled to coverage under the Policy: the Coronavirus is a threat to people's health and not property. It does not cause physical loss to property. Indeed, the governor of Texas, and governors in other jurisdictions, have since entered orders allowing establishments, such as those belonging to Lamacar's customers, to operate without certain social distancing requirements, notwithstanding the ongoing pandemic.[61] People are allowed in these structures, illustrating that the virus does not cause physical loss or damage to property.

---

[60] *See also Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1144-45 (8th Dist.) (mold on insured's wood siding did not cause physical loss or damage because it could be removed by cleaning without causing any harm to the wood: "Absent any specific alteration of the siding, the [insured's] failed to show that their house suffered any direct physical injury as required by the homeowners' policy.")

[61] *See* Ex. E, May 5, 2020 Executive Order. The Court may take judicial notice of this Order because it is a public record and orders regarding the Coronavirus are central to the Complaint.

The presence of a virus does not physically alter the structural integrity or nature of property, because it can be removed by cleaning any potentially affected surface with a commonly available household disinfectant.[62]  Even if the virus was shown to be present on Lamacar's customers' premises, the Coronavirus could not alter the structure of the property.[63]  Lamacar simply fails to allege a plausible claim.[64]

### C.  Other Provisions of the Policy Confirm that Direct Physical Loss to Property Requires Physical Alteration of that Property.

The Court should construe the policy as a whole and give meaning to each provision.[65] The Business Income and Extra Expense coverage is limited by its own terms to the Period of Restoration.[66]  The definition of "Period of Restoration" provides additional context to the intended meaning of the phrase "direct physical loss to property."  "Period of Restoration" means the period of time that: a. Begins at the time of direct physical "loss" and b. Ends on the earlier of: (1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent

---

[62] *See* Ex. D, CDC, *Cleaning and Disinfection for Households*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html (accessed Mar. 23, 2021)). The CDC Guidelines are public records and the Court may take judicial notice of the same.

[63] *DZ Jewelry LLC, v. Certain Underwriters At Lloyd's*, 2020 WL 6193806 at pg. 11 (S.D. Tex. Mar. 12, 2021); Terry *Black's Barbecue,* 2020 WL 7351246 at *7 (Even assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant.); *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1203 (D. Kan. 2020) and *Uncork and Create*, 2020 WL 6436948, at *5.)"; see also *Cafe La Trova LLC v. Aspen Specialty Ins. Co.,* No. 20-22055-CIV, 2021 WL 602585 (S.D. Fla. Feb. 16, 2021); *Mastellone v. Lightning Rod Mut. Ins. Co.,* 175 Ohio App. 3d 23, 2008-Ohio-311, 884 N.E.2d 1130, ¶ 68 (8th Dist.) (mold on insured's wood siding did not cause physical loss or damage because it could be removed by cleaning without causing any harm to the wood: "Absent any specific alteration of the siding, the Mastellones failed to show that their house suffered any direct physical injury as required by the homeowners' policy."); *See, e.g.*, *Mama Jo's, Inc. v. Sparta Ins. Co.,* 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("[W]ith regards to Plaintiff's initial claim for cleaning, cleaning is not considered direct physical loss."); *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F.Supp.2d 705, 710 (E.D. Mich. 2010) (a complete cleaning of a ventilation system was not a direct physical loss), *aff'd*, 475 F. App'x. 569 (6th Cir. 2012);

[64] *Mission Toxicology*, 2018 WL 2222854, at *3 (citations omitted).

[65] *Equitable Life Assur. Soc. of U.S. v. Hall*, 69 S.W.2d 977, 979 (1934).

[66] *See* Ex. A - FM 101 05 16 at 18 of 40.

location.[67]  Thus, the Business Income and Extra Expense coverage sets the end of the coverage period at either (1) the date when the physical damage is repaired, rebuilt or replaced, or (2) the date when business is resumed at a new permanent location.  Read together, it is clear that the phrase "direct physical loss" refers to a loss that requires physical repair, rebuilding, or replacement of property that has been actually, tangibly, permanently, and physically altered.[68]

Here, there can be no "Period of Restoration" because the Coronavirus does not cause and is not alleged to have caused direct physical loss to property requiring any physical repair, rebuilding or replacement.  The inapplicability of the "Period of Restoration" element to Lamacar's alleged loss further demonstrates that there is no direct physical loss to any property. This serves as an irrefutable indication that property policies, such as Lamacar's, are not designed to cover purely economic losses that were not occasioned by direct physical loss to property.  As such, absent physical alteration of property, Lamacar is not entitled to any Business Income and Extra Expense coverage.

### D.  Lamacar Fails to State a Claim for Coverage under the Policy

The allegations in Lamacar's Amended Complaint fail to identify any distinct, demonstrable, physical alteration of any property. Therefore, Lamacar has not alleged direct physical loss to property as required under the Policy and it has failed "to state a claim to relief

---

[67] *See* Ex. A - FM 101 05 16 at 38-39 of 40.

[68] *See*, *e.g.*, *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) (explaining that "repair" and "replace" in period of restoration clause "contemplate physical damage to the insured premises as opposed to loss of use of it"); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (2002) (explaining that, absent a physical damage requirement, a provision limiting coverage to the time necessary to "rebuild, repair, or replace" would "be meaningless"); *Ceres Enterprises, LLC v. Travelers Ins. Co.*, No. 1:20-CV-1925, 2021 WL 634982, at *5 (N.D. Ohio Feb. 18, 2021) (a Period of Restoration ending with repair, rebuilding, or replacement makes sense following and contemplates a material (physical) loss, not a loss of use with no impact to the property's structure); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-04783-SK, 2021 WL 141180, at *5 (N.D. Cal. Jan. 13, 2021) (interpreting direct physical loss of property to include . . . loss of use would rending the language "period of restoration" meaningless); *Mudpie Inc. v. Travelers Casualty Ins. Co. of Am.*, 4:20-cv-03213, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 4, 2020) ("The words 'rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature.") (quoting *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F.Supp.2d 280, 287 (S.D.N.Y. 2005)).

21

that is plausible on its face" or to allow a "reasonable inference that the defendant is liable for the misconduct alleged."[69]

Lamacar alleges its customers' retail sites are in hospitals where significant numbers of Covid patients have been treated as support for the assumption that the Coronavirus was present at its customers' stores.[70] Lamacar only alleges on information and belief that "each of Lamacar's customers have been exposed to the Coronavirus during the course of the pandemic, including through the presence of employees, vendors and/or patrons infected with COVID-19."[71] But as established above, even if this speculation is taken as true, the presence of the Coronavirus at a premises does not constitute "direct physical loss or damage." *See also Byberry Servs. & Solutions, LLC v. Mt. Hawley Ins. Co.*, No. 20-CV-03379, 2021 WL 3033612, *3, *4–*5 (N.D. Ill. July 19, 2021) ("[The insureds] advance two grounds for their business income and extra expense claims. They argue that the state-mandated shutdowns created a 'direct physical loss' of their property. And they argue that COVID-19 physically contaminated their gyms, damaging their property. Both theories fail. As an initial matter, it is unclear that that the presence of COVID-19 would even constitute contamination under Minnesota law. Unlike asbestos or pesticides, 'there can be no dispute that the virus can be easily eliminated with routine cleaning procedures.' . . . Even if COVID-19 could lead to contamination, the plaintiffs have failed to adequately plead its presence on their property. Someone passing through a building while possibly infected hardly amounts to evidence of 'contamination.'") (applying Minnesota law, internal citations omitted).

*Byberry*'s analysis is consistent with Texas law. Even if the virus is alleged to be present and "contaminating" property, the direct physical loss requirement is not satisfied. Lamacar has failed to allege a plausible claim and its Amended Complaint must be dismissed.

---

[69] *Mission Toxicology*, 2018 WL 2222854, at *3 (citations omitted);

[70] Amended Complaint, p. 19, ¶ 73 through p. 22-23, ¶ 86.

[71] Amended Complaint, p.23, ¶ 87.

## II.     The Texas Insurance Code and Bad Faith Claims Fail As a Matter of Law Because There Is No Coverage.

None of the Plaintiff's common law or statutory extra-contractual claims can survive because there is no coverage under the Policy.  Claims for "unfair settlement practices" under the Texas Insurance Code are only triggered when "the liability of the insurer is reasonably clear."[72] Cincinnati's alleged breach of contract is the foundation for Lamacar's entire case. Its extra-contractual claims rest on that fragile foundation.  In the absence of a breach of contract, all of Lamacar's extra-contractual claims collapse.  This was explained by the United States District Court for the Northern District of Texas in its decision in *Bunting v. State Farm Lloyd*: "Having found that defendant did not breach the insurance policy, [plaintiff's] extra-contractual claims fall like a house of cards."[73]  Similarly, in this case, the absence of a breach of the Policy bars Lamacar's extra-contractual claims. Dismissal is therefore warranted.

### A.     Failure of the breach of contract claim precludes Lamacar's Insurance Code Prompt Payment claim.

Lamacar asserts that Cincinnati delayed payment of the claim in violation of the Texas Prompt Payment of Claims Act (*i.e.*, TEX. INS. CODE. § 542, *et seq.*).  To support a claim under the Texas Prompt Payment of Claims Act "a plaintiff must show that . . . the insurer is liable for the claim."[74]  An insurer is not subject to the Texas Prompt Payment Act ("TPPCA") damages for delayed payment unless it was subject to a payment deadline because it owed benefits under the policy.[75] As established above there is no coverage under the Policy.  Therefore, Lamacar's insurance code claims for statutory penalties and attorneys' fees fail as a matter of law.

---

[72] *Primerica Life Ins. Co. v. Gross*, 2018 WL 2181101, at 11 (W.D. Tex. Mar. 27, 2018)

[73] *Bunting v. State Farm Lloyds*, 2000 WL 191672, at *4 (N.D. Tex Feb. 14, 2000).

[74] *Primerica Life Ins. Co.*, 2018 WL 2181101, at 8

[75] *See Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 823 (Tex. 2019); see also *Selery Fulfillment, Inc., v. Colony Insurance Company*, No. 4:20-CV-853, 2021 WL 963742 (E.D. Tex. Mar. 15, 2021).

**B.**     **Failure of the breach of contract claim also precludes Lamacar's statutory and common law bad faith claims.**

An insurer breaches its common-law duty of good faith "when it denies or delays a claim without a reasonable basis and the insurer knew or should have known that no reasonable basis to deny or delay the claim existed."[76]  As a general rule, "there can be no claim for bad faith when an insurer has properly denied a claim that is in fact not covered."  *JAW the* Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 697, 602 (Tex. 2015).*  An insured generally cannot prove a bad faith claim absent a breach of contract.[77]  Similarly, "an insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of the right to benefits."  *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018).

It can be conceded that the duty on the part of insurers to deal fairly and in good faith with their insureds "emanates not from the terms of the insurance contract, but from an obligation imposed in law 'as a result of a special relationship between the parties governed or created by the contract.'"[78]  But, because the special relationship is 'governed or created by the contract,' it "follows that where an insurer has fulfilled its obligations under the contract . . . it generally has no unfulfilled duty stemming from the parties' special relationship."[79]  There is no coverage owed here, no breach of contract and no unfulfilled duty.  Likewise, there is no viable bad faith claim and it should be dismissed.

---

[76] *Marquis Acquisitions, Inc. v. Steadfast Ins. Co*., 409 S.W.3d 808, 816 (Tex. App. - Dallas 2013).

[77] *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995).

[78] *Viles v. Sec. Nat'l Ins. Co*., 788 S.W.2d 566, 567 (Tex. 1990) (quoting *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co*., 725 S.W.2d 165, 167 (Tex. 1987).

[79] *Scalise v. Allstate Texas Lloyds*, 2013 WL 6835248, at *7 (S.D. Tex. Dec. 20, 2013).

## <u>CONCLUSION</u>

There is no coverage available under Lamacar's property insurance policy because the Coronavirus does not cause direct physical loss to property (i.e. physical alteration) as required by the Policy and directly applicable Texas law.  Lamacar does not allege otherwise. Therefore, Lamacar has not alleged a viable, plausible claim on which relief can be granted. Moreover, because no coverage is owed, Lamacar's statutory and common law bad faith claims fail as a matter of law. Accordingly, Cincinnati's Motion to Dismiss should be granted.

(Signature on following page.)

Respectfully submitted,

*/s/ Martin R. Sadler*
Martin R. Sadler
Texas Bar No.: 00788842
Federal ID No. 18230
sadler@litchfieldcavo.com
LITCHFIELD CAVO LLP
One Riverway, Suite 1000
Houston, Texas 77058
Telephone:  (713) 418-2000
Facsimile:  (713) 418-2001

ATTORNEY-IN-CHARGE FOR DEFENDANT
THE CINCINNATI CASUALTY COMPANY

S. Jan Hueber
State Bar No.: 20331150
hueber@litchfieldcavo.com
LITCHFIELD CAVO LLP
100 Throckmorton Street, Suite 500
Fort Worth, Texas 76102
Telephone: (817) 945-8025
Facsimile:  (817) 753-3232

## CERTIFICATE OF SERVICE

This is to certify that on this, the 10th day of August 2021, a true and correct copy of the foregoing document was served on all known counsel of record by electronic transmission, pursuant to the Texas Rules of Civil Procedure and applicable Local Rules, as follows:

Micah L. Skidmore
Rae Guyse
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219

> */s/ Martin R. Sadler*
> Martin R. Sadler