# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| LAMACAR INC. d/b/a/ KELLI'S GIFT SHOP SUPPLIERS | § § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-1396-S |
| THE CINCINNATI CASUALTY COMPANY | § § § | |

## MEMORANDUM OPINION AND ORDER

This case involves an insurance coverage dispute between Plaintiff Lamacar Inc. and Defendant The Cincinnati Casualty Company. Plaintiff filed a claim under its commercial property insurance policy for business interruption losses resulting from the COVID-19 pandemic. Plaintiff alleges claims for breach of contract, violations of the Texas Insurance Code, and breach of the implied covenant of good faith and fair dealing arising from the denial of its claim.

Defendant moves to dismiss Plaintiff's First Amended Complaint [ECF No. 5] ("Amended Complaint"), asserting that Plaintiff has failed to allege any direct physical loss or damage to property that would entitle it to coverage. Having reviewed Defendant The Cincinnati Casualty Company's Rule 12(b)(6) Motion to Dismiss ("Motion to Dismiss") [ECF No. 14], Plaintiff's Response in Opposition to The Cincinnati Casualty Company's Rule 12(b)(6) Motion to Dismiss [ECF No. 19], and Defendant The Cincinnati Casualty Company's Reply in Support of its Rule 12(b)(6) Motion to Dismiss [ECF No. 31], the Court **GRANTS** the Motion to Dismiss for the reasons set forth below.

### I. BACKGROUND

Plaintiff "provides gift shop inventory to more than 10,000 customers" throughout the United States, including hospitals, pharmacies, casinos, hotels, universities, and retirement homes. Am. Compl. ¶¶ 2, 74, 75. The majority of Plaintiff's customers are hospitals. *Id.* ¶ 75. Plaintiff

claims that it suffered significant business income losses because its "customers have suspended or limited onsite retail operations" as a result of the COVID-19 pandemic. *Id.* ¶ 9.

Defendant issued a commercial property insurance policy to Plaintiff: Commercial Package Policy No. EPP 046 98 51 ("Policy") for the period between November 15, 2019, to November 15, 2020.[1] Am Compl. ¶ 3. The Policy provides coverage "for direct 'loss' to Covered Property . . . caused by or resulting from any Covered Cause of Loss." Policy 3. "Covered Cause of Loss" is defined as any "accidental physical loss or accidental physical damage" not excluded or limited by the Policy.[2] Policy 5, 38.

The Policy covers loss of business income "sustain[ed] due to the necessary 'suspension' of [the insured's] 'operations' . . . caused by direct 'loss' to property at a 'premises' caused by or resulting from any Covered Cause of Loss." *Id.* at 18. It also includes a Commercial Property Expanded Coverage Endorsement ("Endorsement") that provides additional coverage for loss of business income sustained due to physical loss or damage at "dependent properties" that are "operated by others whom [the insured] depend[s] on to . . . accept [its] products or services" ("Business Income Loss from Dependent Properties Coverage"). Am. Compl. ¶ 3-4; Endorsement 1.[3] As stated in its Amended Complaint, "[i]n addition to insuring [Plaintiff's] loss of business income resulting from loss or damage to [its] own covered property, [the] Policy includes expanded coverage for [Plaintiff's]

---

[1] The Policy and its endorsements are attached as Exhibit A to Plaintiff's Original Petition and referenced in (but not re-attached to) Plaintiff's First Amended Complaint. *See* ECF Nos. 1-3; Am. Compl. ¶ 20. The relevant portions of the Policy are also attached to the Motion to Dismiss. *See* ECF No. 14 Ex. A & B. Citations to the Policy in this Memorandum Opinion and Order refer to the page numbers at the bottom of the Policy Form FM 101 05 16.

[2] The Policy is an "all-risks" policy, a "special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 504 (5th Cir. 2000) (quoting *U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.*, 690 F.2d 459, 461 (5th Cir. 1982)).

[3] Citations to the Endorsement in this Memorandum Opinion and Order refer to the page numbers at the bottom of the Endorsement Form FA 250 05 16.

loss of business income resulting from loss or damage to the property of [its] customers." Am. Compl. ¶ 23.

Plaintiff focuses the bulk of the Amended Complaint on the argument that SARS-CoV-2, the virus that causes COVID-19, physically damages property. According to Plaintiff, "the specific morphology of the Coronavirus, including the characteristic spikes or clubs protruding from the virus's spherical casing," causes it to "chemically or ionically bond[] with solids and particulate matter suspended in ambient air, resulting in a physical alteration of property." *Id.* ¶ 7. Plaintiff cites numerous scientific studies purportedly illustrating how the virus "can physically bond with, alter and contaminate metal, wood, plastics, fabrics, glass and other materials leaving such property susceptible to further transmission of COVID-19." *See id.* ¶¶ 35-62. Plaintiff also points to the "range of shelter-in-place, quarantine and lockdown orders" issued by state and local governments in response to the pandemic, many of which included findings to the effect that the virus "causes property loss or damage due to its ability to attach to surfaces for prolonged periods of time." *Id.* ¶ 69 (quoting Amended Order of Dallas County Judge Clay Jenkins (Mar. 31, 2020)).

Plaintiff alleges that all of its "customers have been exposed to the Coronavirus . . . through the presence of employees, vendors and/or patrons infected with COVID-19," and that "virus-containing respiratory droplets have also contaminated and physically altered the surfaces" of property belonging to each one of Plaintiff's customers. *Id.* ¶¶ 87, 89. By way of illustration, Plaintiff identifies several hospitals to which it supplies gift shop inventory, alleging that each one treated patients for COVID-19 and therefore was "exposed to the Coronavirus on their premises." *See id.* ¶¶ 76-86. Many of Plaintiff's customers have either suspended retail sales or permanently gone out of business, causing them to order less merchandise from Plaintiff or to stop doing so altogether. *Id.* ¶¶ 94-99. Plaintiff reports that its revenue fell by more than $24 million—or 70%—in 2020. *Id.* ¶¶ 101-02.

Plaintiff submitted a claim on March 17, 2020, requesting coverage under the Policy's Business Income Loss from Dependent Properties Coverage. *Id.* ¶ 104. Defendant denied the claim in April 2021, on the grounds that it had "not been provided with any evidence of direct physical loss or damage to dependent properties from a Covered Cause of Loss." *Id.* ¶ 109. Challenging Defendant's denial of coverage, Plaintiff asserts claims for: (1) breach of contract; (2) violations of Chapters 541 and 542 of the Texas Insurance Code; and (3) breach of the duty of good faith and fair dealing. *See id.* ¶¶ 12, 115-139.

Plaintiff claims it is entitled to coverage because "[t]he viral infestation and alteration of air and property at [Plaintiff's] customers with the Coronavirus constitutes physical loss and damage to [those] customers, upon whom [Plaintiff] depends for the sale of its gift shop supplies." *Id.* ¶ 91. Defendant maintains that Plaintiff "has not alleged any physical alteration to property that would give rise to its claimed business income loss" because "the Policy provides property insurance coverage, not financial loss coverage in the absence of direct physical loss or damage to property." Def.'s Br. [ECF No. 14] at 1-2.

## II. LEGAL STANDARD

### A. *Motion to Dismiss*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most

favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). However, the court may also consider "'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

**B.**   *Insurance*

Courts interpret insurance policies under ordinary principles of contract law. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). The Court's "primary

concern is to give effect to the intentions of the parties as expressed by the policy language." *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). In doing so, the Court gives terms used in the policy "their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning." *Id.* However, "[w]hen terms are defined in an insurance policy, those definitions control the interpretation of the policy." *E. Concrete Materials*, 948 F.3d at 300 (internal quotation marks omitted) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003)). "[A] court should interpret an insurance policy in a way which (1) confers meaning to all its terms; (2) harmonizes and gives effect to all of the provisions; and (3) avoids rendering parts of the policy inoperative or meaningless." *Great Am. Ins. Co. v. Emps. Mut. Cas. Co.*, 18 F.4th 486, 490 (5th Cir. 2021) (cleaned up).

Under Texas law, the insured initially bears the burden of establishing coverage under the terms of an insurance policy. *O'Quinn v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018); *JAW The Pointe, LLC v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). Once coverage is established, the burden shifts to the insurer to prove the loss is excluded from coverage. *O'Quinn*, 906 F.3d at 367. If an exclusion applies, the insured must then establish that an exception to the exclusion exists to restore coverage. *Ewing Constr. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) (citing *Gilbert*, 327 S.W.3d at 124).

"Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011) (quoting *Gilbert*, 327 S.W.3d at 133). An ambiguity does not exist, however, "simply because the parties interpret a policy differently. If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Id.* "When an exclusion is clear and unambiguous, [the Court] interpret[s] it according to its plain meaning,

[giving] no deference to the insured's interpretation." *Id.* (citing *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010)). As such, cases involving the interpretation of insurance policies are particularly appropriate for summary disposition. *Gonzalez v. Denning*, 394 F.3d 388, 395 (5th Cir. 2004); *Principal Health Care of La., Inc. v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994).

### III. ANALYSIS

#### A. *Coverage*

Because the Policy is an "all-risks" policy, Plaintiff is entitled to coverage for direct physical damage or loss to property resulting from any cause that is not excluded by the Policy. *Alton Ochsner Med. Found.*, 219 F.3d at 504. However, Plaintiff has not established that any physical loss or damage occurred to its customers' property that would entitle it to Business Income Loss from Dependent Properties Coverage. *Hartford Ins. Co. v. Miss. Valley Gas. Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) ("[P]roperty insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property.").

The Fifth Circuit recently ruled that under Texas law, "'physical loss of property' . . . require[s] a tangible alteration or deprivation of property." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, No. 21-50078, __ F. 4th __, 2022 WL 43170, at *4 (5th Cir. Jan. 5, 2022). The property owner in *Terry Black's* operated a restaurant and filed a business interruption coverage claim under a similar policy after civil authorities prohibited in-person dining in response to the COVID-19 pandemic. In upholding the district court's denial of coverage, the Fifth Circuit found that Terry Black's had "failed to allege any tangible alteration or deprivation of its property." *Id.* The Fifth Circuit explained that "[n]othing physical or tangible happened to [the] restaurants at all. In fact, [Terry Black's] had ownership of, access to, and ability

7

to use all physical parts of its restaurants at all times. And importantly, the prohibition on dine-in services did nothing to physically deprive [Terry Black's] of any property at its restaurants." *Id.*

The same is true in this case. Plaintiff's customers have not experienced any loss of property that would trigger coverage under the Policy because nothing physical has happened to their property. Ultimately, Plaintiff argues that the COVID-19 pandemic deprived its customers of the ability to conduct retail sales at hospital gift shops, but it has not plausibly alleged that the virus had tangibly altered property. *Id.* (coverage "requires a *loss of property*, not the loss of *use* of property. . . . This distinction is clear enough that had the parties intended the policy to cover a loss of use of property, they would have said so explicitly.") (emphasis in original).

*Terry Black's* focused on the meaning of "direct physical loss" because there was "no dispute" that the plaintiff in that case had "not alleged it suffered direct physical damage to property." *Id.* at *3 n.4. By contrast, Plaintiff devotes most of its complaint and briefing in this case to alleging that SARS-CoV-2 causes physical damage to property, describing at length how the virus physically alters the composition of air and bonds to surfaces. *See* Am. Compl. ¶¶ 7, 35-62; Pls.' Br. 12-19. The Court finds that these allegations are insufficient to plausibly allege that the virus caused direct physical damage to property.

Numerous courts in Texas and across the country have come to the same conclusion. *See, e.g., Vandelay Hosp. Grp. LP d/b/a Hudson House v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2021 WL 2936066, at *6 (N.D. Tex. July 13, 2021) ("[D]espite the repeated use of the word 'physical,' the third amended complaint does not plausibly plead that [the] property suffered a distinct, demonstrable, physical alteration."); *PSG-Mid Cities Med. Ctr., LLC v. Jarrell*, No. 3:20-CV-02477-E, 2021 WL 1894696, at *4 (N.D. Tex. May 11, 2021) (the term "physical loss of or damage" requires actual physical alteration to the insured property, and temporary COVID-19 restrictions did not physically alter property); *Univ. of St. Thomas v. Am. Home Assurance Co.*, 2021 WL 3129330, at *5 (S.D.

8

Tex. July 23, 2021) ("Even taking as true UST's allegation that the virus was present on its campus, as the court must at this stage, the court concludes that it does not constitute a direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated.") (quotations omitted); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) ("[W]e do not see how the presence of [viral] particles would cause physical damage or loss to the property."); *Manhattan Partners, LLC v. Am. Guar. & Liab. Ins. Co.*, No. 20-14342 (SDW) (LDW), 2021 WL 1016113, at *2 (D.N.J. Mar. 17, 2021), *appeal docketed*, No. 21-2089 (3rd Cir. June 7, 2021) ("[G]eneral statements that the COVID-19 virus was on surfaces and in the air at [an insured's] properties [are] insufficient to show property loss or damage."). Plaintiff's attempts to differentiate its case fall short. As these courts explained, "COVID-19 does not cause physical damage to property; it causes people to get sick." *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, 525 F. Supp. 3d 793, 799 (S.D. Tex. 2021) (collecting cases). And even though the Fifth Circuit recognized that "'loss' and 'damage' have two distinct meanings" in this context, its holding that the COVID-19 pandemic did not cause physical loss of property supports the conclusion that it did not cause physical damage either. *Cf. Terry Black's*, 2022 WL 43170, at *4 ("Nothing physical or tangible happened to [the] restaurants at all.").

As in *Terry Black's*, the Policy's Business Income Loss from Dependent Properties Coverage "require[s] [Plaintiff] to allege [it] suffered a direct physical loss of [or damage to] property," or in this case, its customer's property. *Terry Black's*, 2022 WL 43170, at *3; *see also* Endorsement 1; *Assocs. in Periodontics, PLC v. Cincinnati Ins. Co.*, 540 F. Supp. 3d 441, 449 (D. Vt. 2021) (holding that a similar "Dependent Property provision pertains to properties other than those owned by the insured, and requires physical loss or damage."). Plaintiff's claim for breach

9

of contract fails because it has not plausibly alleged any direct physical loss or damage as required for coverage by the Policy.

Additionally, the fact that the Policy is a commercial property insurance policy supports denial of coverage because, like the policy in *Terry Black's*, the business interruption coverage afforded by here "is tied to the commercial property that is insured. The policy insures the commercial property, [and] thus covers business interruption that is caused by loss or damage *to the* commercial property." *Id.* (emphasis in original).

### B.  *Extra-Contractual Claims*

Plaintiff asserts extra-contractual claims for violations of the Texas Insurance Code and breach of the implied covenant of good faith and fair dealing. Plaintiff alleges that Defendant violated Chapters 541 and 542 of the Texas Insurance Code by engaging in deceptive trade practices and failing to promptly pay Plaintiffs' claim. *See* Am. Compl. ¶¶ 133-137. Plaintiff also claims that Defendant breached the implied covenant of good faith and fair dealing because it failed to investigate and promptly pay Plaintiff's claim. *See id.* ¶¶ 122-32. However, the insured generally cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 495 (Tex. 2018); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."). Likewise, when the insured is not entitled to coverage, common law bad faith claims generally do not survive. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010); *Progressive Co. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (per curiam); *Certain Underwriters at Lloyds London v. Corp. Pines Realty Corp.*, 355 F. App'x. 778, 783 (5th Cir. 2009) (per curiam). Because Plaintiff has not plausibly pleaded that it is entitled to benefits

10

under the Policy, its claims for violations of the Texas Insurance Code and breach of the implied covenant of good faith and fair dealing also fail.

### C. Leave to Amend

Ordinarily, a court should not dismiss a claim that fails to meet the pleading requirements "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Plaintiff has already amended its complaint once and has not requested leave to amend in briefing on this motion. Because Plaintiff's losses are not covered under the clear terms of the Policy, the Court finds that any further amendment would be futile. *See Terry Black's*, 2022 WL 43170, at *7 (upholding denial of leave to amend because "[t]he unambiguous terms of the policy preclude coverage of [the] claimed losses and therefore the district court did not err in denying leave to amend based on futility"); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (leave to amend may properly be denied "where the proposed amendment would be futile because it could not survive a motion to dismiss").

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant The Cincinnati Casualty Company's Rule 12(b)(6) Motion to Dismiss [ECF No. 14]. The First Amended Complaint is therefore **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

SIGNED January 26, 2022.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE